On behalf of the appellant, Mr. William Martin, on behalf of the appellees, Mr. Ryan Harrington. Mr. Martin. Thank you. Counsel, Mr. Harrington, justices. If it pleases the court, good morning. As a threshold matter, I should clarify that the only defendant in this case is the county, is the Forest Preserve District. It was listed a little bit differently. I wanted to make that clear. I represent Sandra Schmitt in this matter. Sandra suffered severe injuries due to the defendant's construction, their repair, and their maintenance of a stairway. Her injuries include two fractured vertebrae and a closed head injury for which she continues to suffer today. The stairway essentially consists of huge stone blocks stuck into a hillway, stuck into a hill. The defendants call that a stairway. The purpose for the stairway was to provide access from a parking lot to an elevated picnic grove type area. The defendants selected these stone blocks in an effort to comport to their personal view of what was beautiful, what was consistent with the topography, and what was consistent with a natural experience. So they exercised their discretion in doing that, is that correct? They exercised their discretion in electing to build a stairway. So it wasn't a ministerial task? Well, aspects of the work and the decisions were clearly ministerial, Justice. Our position is that the decision about whether to do erosion control or a stairway is discretionary. The decision about whether to use stone blocks or wooden may be discretionary. But the decision to put stone blocks in place that had disparate heights, irregular risers, disparate widths, uneven edges, that is no longer discretionary. Well, what would have told them how to do that? Standards, codes, regulations, common sense. And what standards and codes specifically apply? The standards and codes that specifically apply include the Illinois, excuse me, admissibility code, the DuPage County Code, OSHA rules and regulations. Okay, and for the DuPage County Code, isn't that for buildings? Parts are for buildings and parts are... Parts of it, you said? Yes, yes. Parts are for buildings, parts are for all kinds of structures, for buildings... All kinds of structures, and where do you find that definition in the building code, that it applies to, quote, all kinds of structures? Well, there's certainly a little more articulate than that. It applies to the initial section, the initial section of the code applied to all buildings, facilities, and structures. The second part applied to new houses. Okay, so you said buildings, this is certainly not a building. It is not. It's not a facility. It is not a facility. It is, however, a structure. Okay, and what is the definition of a structure that is found in the building code? Well, my recollection, Judge, is that it provides that any structure, and I can't honestly remember the definition of structure, I'm not going to make that up. I recall, though, that, you know, any structure that is or becomes unsafe shall be taken down or removed. An unsafe structure is one which threatens the public health, safety, or welfare. It's a broad definition. It includes, you know, I believe, fairly, structures would include means of ingress and egress, that these are basic components of every building and every structure. Is it your opinion? I'm sorry, go ahead. Did the handrail rules apply to structures as part of that DuPage County Code? They do in an indirect sense. The evidence in the case is that the general provisions in the code, such as all the work be performed in a workmanlike manner, that all the work be performed such that it's safe and that any unsafe structure be removed. Our evidence, as provided by our expert witness, the engineer, Mr. Scott Sebastian, said that those general terms are defined by the specific code and standard section. So, for instance, within the DuPage County Code 208-207, which does provide for guardrails, and it provides it literally within new houses. But our evidence is from Mr. Sebastian's that those provisions are relevant to understand what is workmanlike work, what is an unsafe construction. So you're saying that construction in a forest preserve is similar to construction in a house? The purpose of stairways are well accepted to provide ingress and egress. The need for safety is recognized. And it's more than just the DuPage County Code. It's all the other provisions that we cited, including the Illinois Accessibility Code, which clearly applies to stairways. It applies to facilities and state improvements. And state improvements are defined as landscaping, pedestrian pathways, steps, ramps, and the like. So, viewing these provisions, I believe, individually provides a basis to establish their applicability. Viewing them in total, considering the consistency in every one of them, every single one of these codes in some sense requires that risers be even, they be the same height. Thank you. What authority do you have to make the contention that the codes apply to what would be considered a natural or wildlife reserves or other areas where there is going to be some sort of construction that's supposed to make things safer than they might otherwise be, but don't necessarily conform to a staircase in a mall? I can buy your argument that if the Forest Preserve built a facility, a gymnasium, a swimming pool, a workout area, inside that building and its environs, then maybe their building code does apply. But I'm having a problem with the idea that outside, where people are supposed to be communing with nature, that the building code applies. Is there any case law that you're aware of that suggests that, or even a code that suggests that? Well, does the Court focus on the DuPage kind of code? No, it's the concept that when things are done in a rustic manner, for instance, what would have happened if they put up a split rail fence instead of a railing? Would that have been considered willful and wanton? Did the County of DuPage require building permits for other structures as well as this structure in wildlife areas or natural areas, open areas? Because if they didn't require building permits, I don't know why I should believe that at least the County thought that the codes applied. Did they red-tag this after the fact? I'm sorry for interrupting you, but this is the logical conclusion, which is if the building codes applied, then maybe there should have been some repercussions from the County relative to red-tagging this violation of a building code. Did they do that? There's no evidence that they did that. Is there any evidence that the Forest Preserve in building this structure or any other structure applied for a building permit? There's no evidence that they applied for a building permit in this structure. I do not have evidence about other issues. The code clearly provides that a permit should be obtained. My expert witness rendered opinion testimony that it be obtained. I guess in responding to the court's, in a sense, skepticism, I step back and I ask, why wouldn't the codes be applicable? What is so different about providing a stairway within a house than it is providing it in a hill in a Forest Preserve? The fact that people are out relaxing and enjoying the weather, enjoying the scenery, doesn't mean that they're not entitled to some basic sense of safety. Well, didn't they work very hard to make this a safe stairway? I mean, they built the stairway. They had no information after that stairway was built that anyone injured themselves, and yet they did put in a handrail. What about their conduct, other than what you just told us in terms of not being consistent with the DuPage County Building Code, suggests that their conduct was willful and wanted? I will concede that the defendants worked very hard. I will dispute to my last breath that it was directed to or in fact accomplished any type of safety. In fact, everything they did was done within the prism of their sense of what is visually compatible, and everything they did compromised the safety of this and made it worse. So they were negligent then? They were willful and wanted. And I'm asking for some details, counsel. How is what they did, other than, in your view, not being consistent with the building codes, willful and wanted? Well, the building codes represent what is common in the industry, that you cannot have safe stairs unless the risers are even, unless the treads are even, unless there's edges that if you step down, there'll be a stair. And so these are questions of fact that a jury should be allowed to appreciate, and those are the issues that are part of the code matters. So what they did then was after they put these slabs into the hill, recognizing they had no intention of putting up a handrail, they recognized that it was unsafe. They had knowledge that it was unsafe. So they did then undertake to put up handrails. Well, is there something in the record that would point to the fact that they knew this was unsafe? Wasn't the testimony in the record just the opposite? I don't think so. What testimony or deposition or evidence is there that the personnel involved with constructing the stairway or the handrail knew it was unsafe? Mr. Patempa, the man that was in charge of the project, testified that all of the post-initial construction maintenance work was done for purposes of safety. So that was their goal, is to make it safer, correct? Their subjective goal was to make it safer. Probably that's true. But the fact, their subjective goal was to make it a beautiful stairway, too. And so I respectfully suggest that their subjective intent in why they constructed this is not sufficient to give rise to safety for the public, that the public is entitled to a higher standard. And the fact that somebody says, well, I'm going to put a handrail up for safety doesn't mean that it was done properly and or it doesn't mean that they didn't recognize that as constructed it was unsafe. So are you saying that violation of the building codes in and of itself is willful and wanton conduct? No, I'm not. I'm saying that willful and wanton conduct involves a jury question. It is variable. It is not easily subjected to definition. It can be one degree higher than negligence. It could be one degree less than. Well, aren't you really supposed to be saying, according to appellate case law, that if it's a material issue of fact where reasonable minds could disagree as to whether or not it's a matter of law, this is or is not willful and wanton, that the trier of facts should be given the opportunity to make that decision? Absolutely. I absolutely believe that. So if reasonable minds would disagree, then this should have been a jury trial. Well, I don't know that the standard of reasonable minds can differ. The issue is whether there's any question of material fact where the parties differ. And there clearly are multiple areas of differences. Okay. So now we're not talking about whether it's willful or wanton as a matter of law. We're talking about whether or not there are material issues of fact that contravention will supposedly make a determination that it is or is not willful and wanton as a matter of law. What are those material issues of fact that are in contention that would stave off a determination by reasonable minds as to whether or not this was willful and wanton or not? Did the district have knowledge? May I continue? Yes. Okay. Did the district have knowledge that its initial construction was unsafe? And that's disputed. They assert that they did not have knowledge that everything they did was done to render it safe and or to render it appealable. But the evidence is that you start off with an unsafe stair construction, and then you put a handrail 15 inches outside the edge. And a person has no choice, really, essentially, but to use the handrail. And in pulling onto the handrail, it essentially pulls you off the stairs. And then the second component, and this is a significant one, is that they sent someone out. They made two changes afterwards. One was the handrail, and one was the addition of a stone. A significant part of our case is that the edges were irregular so that if you could step down on one step at stone, the second step at stone, in that same plane, you're now in a ditch. And they recognized that that was hazardous, and they sent a guy out, and he added some stone in some places. So, again, they recognized that this was unsafe. But rather than close it down or rather than make anything even or reasonable, they did these haphazard efforts and then said, good luck. And then as soon as the accident is over, then they bring the stairways, the handrails in closer. Everything they did was geared towards what was beautiful and compatible with their vision. And they disregarded any sense of safety. And all we're trying to do is have a jury say, you know, that was unreasonable, that was inappropriate, that's wolf on the run. Any other questions? Thank you. Thank you. Mr. Harrington. Good morning. May it please the court. Again, my name is Ryan Harrington. I represent the Forest Preserve District of DuPage County. The district filed a motion for summary judgment that provided the trial court three completely independent bases upon which the trial court could grant the motion for summary judgment. It established that the plaintiff couldn't prove the district was guilty of wolf on the run conduct. That was one independent basis. It also established that the district was entitled to absolute immunity for this incident under Section 2-201 of the Tort Immunity Act, which provides absolute immunity for discretionary acts of its employees. That's the second independent reason the trial court could grant summary judgment. And third, the district established under Section 3-107 of the Tort Immunity Act. That this is a path or a trail as defined by the statute and case law, for which we are also entitled to absolute immunity for any injury that occurs on a path or a trail. Given that this court reviews the grant of summary judgment de novo, and that it can affirm the grant of summary judgment for any basis found in the record, and not simply what the trial court chose to use. When you say absolute immunity, where does wolf on the run come into play with respect to recreational property? In relation to the absolute immunity? They're all independent. For recreational property, the district can only be responsible for injury caused by our wolf on the run conduct under Section 3-106 of the Tort Immunity Act. Under 3-107, however, the more specific statute, if an injury occurs on a path or a trail that leads to- Let me just draw attention to the word absolute immunity. It's immunity except for the cases that provide for wolf on the run exceptions. It's actually the other way, is that generally the wolf on the run standard will apply to recreational areas, such as this forest preserve. However, when the injury occurs on a path or a trail that provides access to a scenic overlook, as do these stairs, then that narrower provision of Section 3-107, then the absolute immunity applies to that specific setting. When you say absolute immunity, you mean wolf on the run has no involvement or relation to this situation? Correct. There's no- Liability cannot be based on either negligence or wolf on the run. That's correct, for these limited settings. So 3-106 is the more general provision as it applies to- If they train squirrels to attack them on the trail, that might be liable? Well, I would question- That sounds like an assault on the battery. I would question whether that's a condition of the trail versus something coming out of the trail. Yes. But they are, each of these bases for the summary judgment are independent. I would like to start with the Section 3-107, the immunity for an accident, or rather for an injury that occurs on a path or a trail. Counsel in his opening statement concedes that this stone, rough cut stone stairwell does provide access to a picnic and I believe you said grove area. At the Blackwell Forest Preserve, the picnic area and scenic overlook is at the edge of one of the parking lots. Also next to this parking lot is a lake and other trails leading on through other portions of- Is it a lake or a pond? Well, we call it a lake. Some people might call it a pond. What was here before was a worn footpath up the side of the hill. This is on the west side of the hill. On the north side of the hill is a crushed gravel path leading to the top of the hill. The north side is less of a slope than the west side. And as they were putting in these stones for erosion, Mr. Patempa, the district's maintenance manager, decided to make them into stairs. What is not in factual dispute is that these stairs provide access to a scenic overlook. And the case law interpreting Section 3-107, the one that provides absolute immunity, is that we cannot be liable for an injury that occurs on a path that leads to natural or scenic areas. It doesn't matter what it's made out of. It's what it does. What does this area accomplish? Sometimes they use railroad ties and stack those up to create areas. Sometimes they use crushed asphalt. Sometimes they're actually not pavement, but asphalt paths throughout the park. But as long as these routes provide access to a scenic overlook such as this, then the absolute immunity provisions of Section 3-107 apply. What if they deliberately put boards in with nails sticking up? So they knew at the time they did it, anybody walking up would step on a nail and probably receive some type of injury. Is that absolute immunity? In the setting where we're using it here under 3-107? Right now we're talking about your little stairway up the hill. If that were to be found to be a condition of the path or trail that caused the injury, under the reading of 3-107 in the case law interpreting it, there would be absolute immunity for that, if that occurred. And that's not what occurred here, but if it did, under 3-107 in the case interpreting it, the absolute immunity would apply. But if they put nails into planks like Justice Bowman suggested, might that be a factual issue as to whether or not it was really intended as an access way to a scenic overlook? Under 3-106 it would certainly raise an issue about willful and want conduct. Or train squirrels to attack people that use this scenic path. Although I don't think they're part of the path. If it is a scenic path, and you can determine whether in some instances, because I've climbed in Star Rock State Park, and we went places where there were no paths. And if we had fallen, we probably had nobody to blame but ourselves. But if they had put impediments or obstructions to us that made it more dangerous, then maybe they would be liable, would they not? Just as Justice Bowman was suggesting with the planks and the nails. I honestly have never seen a case that had such a fact pattern. Based on what 3-107 says now, I believe the absolute immunity provisions would apply. I don't know that for sure. But what we have here, however, is rough cut stones without the intentional placement of any dangerous object. But doesn't this have to be an integral part of a trail, let's say, on either side of it? You're saying that the focus is just access? There's not a requirement regarding the size of the trail. What about the connection, though? I mean, it's not like a bridge in the McElroy case. This is a path unto itself. No, it is not part of a path. It is the path. It just happens to be made out of rough cut stones to provide access. So you're saying it was a path also known as a trail? A stairway that was a trail? Is that what you're saying? The stairway constitutes or qualifies as a path or trail based upon the case law interpreting 3-107. If we think about the crushed gravel path on the north side of the hill, that, too, simply starts at the edge of the parking lot and ends at the top of the hill. So some of our trail systems are expensive. Are you saying that there are two access trails? They were constructed differently, but absolute immunity would have applied to either one? Correct. Now, what if they hadn't done anything and somebody had slipped climbing a grassy knoll? What liability would have arisen in that situation? Well, there, there wouldn't have been any condition other than slipping on grass that caused the injury. It'd still be, that would then shift back to the Wilflam Blanton, but most of our property isn't developed at all. So it's just a natural setting. You're not liable for injuries that occurred. If you think of the snow and the ice examples are the easiest ones. But here, if someone was just walking up the side of a hill and they slipped, there wasn't a condition that the district created. This is a condition of the earth. So that, that would go back to the Wilflam Blanton versus the narrower 3107 absolute immunity. I asked Mr. Martin about red tagging of this path, stairway. Was there any red tagging? Was there any notification from any corporate entity indicating, municipal corporate entity, indicating that in the future, Forest Preserve should seek a building permit? No, and I realize it's not in the record, but no governmental entity of any type contacted the district about this. And I guess it could be pointed out, when this case started, the county was a named defendant. They were dismissed early on when we admitted that this occurred within our property on the Forest Preserve. They're two distinct municipal entities. But no one has cited the district for the construction of this stairway. Now, do you agree that the DuPage County Building Code applies to structures? And that this was a structure? The only permit, this is not a structure. It's, it's. Why not? It's simply an elaborate, if you will, path in a Forest Preserve. Structures are built. Well, it actually was a stairway. I mean, you're using the word path, but, I mean, there were stairs. They were more naturalistic in terms of their look. Structures are not necessarily buildings. Otherwise, they wouldn't have used the word building and duplicated it with a structure. So, structure has to be something other than building. The stairs could be part of a structure, but this is simply, you know, stones placed into a hill. We didn't build, I believe it was Justin McLaren pointed out, a gymnasium or something. And when we have that, then the duty changes completely. We go all the way back down to 3102 negligence. Here, though, we have the willful one standard, which is one issue, and the path and trail meeting in 3107, which is absolute immunity. I don't believe, though, I answered your question, but I just said, I'm sorry, what was the? I didn't, I don't, I don't even ask them unless they make a comment. Well, is there a definition of structure? A structure is different than a building with respect to language in the code, because the code mentions building, it mentions structure. So, the intent is that structure is something different than building. So, why isn't this a structure? Well, it's not a structure in that the provisions of the building code, as far as what, how stairs have to be constructed, it's very limited. It's actually a little surprising. The only portion of the building code that references stairs is specifically in reference to not public facilities, even residential homes and townhomes. So, the fact that the tread and the stair risers here were of different lengths and widths doesn't apply at all to what the code requires, because it's only under residential facilities. With this, it actually leads to, like, the second portion regarding the discretionary acts immunity, which is also absolute immunity for the district in this case. The discretionary acts provisions of the TOR Immunity Act provide that a discretionary act involves an exercise of personal deliberation and judgment in deciding whether to perform a particular act and how, and in what manner the act should be performed. Now, the plaintiff initially concedes that our decision to build this stairwell was discretionary. Mr. Patempo went out to this location initially to put in what he was intending to be erosion prevention. As they were placing the stairs, he made the choice on his own, without consulting anybody, to turn these into stairs. That's the very definition of a discretionary act. He didn't have to do this. He just decided to do it as he was building it. One of the issues of whether something's a ministerial act or a discretionary act is whether a statute or code mandates the manner in which it be done. And while the plaintiff has referenced a number of codes and standards, none of them mandate the manner in which Mr. Patempo and the district built these rough cut stone stairs at the Blackwell Forest Reserve. What about the handrails? The handrails, too, were something they chose to put on. They weren't required by any code or statute that applied to the setting in which we have here today. They didn't have to do that. They built the stairs, thought, you know what, to make it safer. Let me ask you this. If we take the position that this is a structure, would the county code relative to handrails apply to call it a structure? The county code, as it applies to stairs and handrails, is found within the provision. It only applies to residential homes or townhomes. So it wouldn't apply to this setting. And I think that's an important issue if we go to the Wolf and Watt portion. They put in the handrail to make it safer. Safer, not to make it safe. And also it's important to note that the fact that an injury occurred here doesn't mean it's not safe. Those stairs have been there for five or six years now. The only time we've ever had a reported fall is Ms. Schmidt. So the fact that one person fell doesn't make these stairs, one, dangerous. It doesn't make the district's construction of it negligent, which isn't the issue here. In fact, the trial court even considered that, but that it was Wolf and Watt, something almost approaching intentional or criminal. It doesn't come anywhere near that. As the plaintiff points out, we spent a lot of time after it was constructed. How do you answer the argument that Wolf and Watt is one paragraph more than negligent? It depends on the facts of the case. And the trial court specifically said that it viewed all of the facts presented to it in light most favorable to the plaintiff, the non-moving party here. And it found as a matter of law that the facts that they had, the evidence that the plaintiff had to present to the court, wasn't sufficient in this case to establish Wolf and Watt in conduct. In fact, because regardless of the arguments of how we want to phrase something, the plain facts of the case is they built the stairwell and they were making continuous improvements to it. And let's see, my time is up. No matter how they built the stairway, whether they built it with, you know, logs with nails in it or traps with holes, absolutely would apply according to your interpretation of the Tort Immunity Act. If it's doing or if its purpose is what? I'm talking about this stairway. Yeah, this stairway that provides access to the Seattle Overlook. No matter how it was built, absolutely immunity would apply. Based on the statute and case law, yes, it would. 3107 would apply. Thank you. Thank you. Mr. Martin. Thank you. I reexamined the DuPage County Building Code in an effort to see if there was a definition of structure. And frankly, reviewing it, it appears from my review that it is not defined. I looked at the definition section, and we go from the word story to the next word is temporary. What we do have, though, are some evidence about the purpose of the code. The purpose of the code is to provide safety, health, and public welfare through structural strength and stability, means of egress and light ventilation regarding hazards incidental to the use, design, construction, alteration, relocation, removal, or demolition of buildings and structures as section 100.2. 100.3 scope, these regulations shall control all matters concerning the construction, alteration, addition, repair, relocation of all buildings and structures. Why doesn't absolute immunity apply based upon the fact that this is an access trail? This is not an access trail. The defendants have always claimed that there was two means of access. One was these stairs that if a person chose to navigate them, they could do it. There was an alternate one. We've always disputed that. I've been out there a bunch of times and was unable to locate what they were saying. I don't understand your answer because the fact that there were two trails doesn't mean that either or neither of them was not an access trail. In my mind, an access trail is where some people are. There is a trail that allows them to go from where they are to where they want to go, and if where they want to go is a scenic access point, then why isn't this and the gravel trails that are absolutely immune? Section 107 addresses, by definition, paths along the lines of fishing, hunting trails, paths towards particular scenic areas. This isn't a path. This is a stairway that goes from a parking lot up to the top of a hill. The legislature clearly, anybody could have defined a path to include stairs, and I think that Justice pointed out the concept if it's an integral component. If a bridge is an integral component of the path from one edge of the path, the bridge to the other, then it can be considered part of the path. This is an independent structure. This was maybe 1,000 yards from the parking lot to the access scenic point, and 950 of those yards was trail, even though it went up and down a hill and a vale. But then it came to one or more set of stairs. The trail excluding the stairs would be absolutely immune, but the stairs would not be. Is that what I understand your argument to be? No. Actually, I wasn't saying that. I was saying I think if it's an integral part of the pathway, it might be. That would be an evaluation of the particular facts. Justice Zinoff raised that issue earlier about the bridge associated with the path. None of those facts exist. This is a simple stairway. Well, it serves the same function as a bridge, doesn't it? It connects. Well, then every single stairway is a pathway. Then every single bridge is a pathway. That's not the law, and that's not the facts in this case. In this case, there was no accepted path and then a stairway and a continuation of a path. This was new construction of a stairway from a parking lot to the top of a hill. Is it not also true that before these rocks were built, people were accessing this access or this scenic point via that route? There's some evidence that there was some of that, and there was some evidence that there was erosion issues. Which would make the access route possibly more dangerous? Well, I'm not following your bounds there, Justice. Well, my point is that if this was an access route that was totally and completely unimproved and then it became affected by erosion and attempts were made to alter or amend or resolve the erosion, and this structure was built in part to do that, how does this access way no longer become an access way when apparently the rocks that were set up could have been either riffraffed or could have been set up as they were? I guess all I can do is I'm struggling with the concept that the fact remains. So if some one or two people decide to come down that hill, does that make that into an access way or a path? That is the essence of the issue. There's no evidence that there was an established path through one point to another and that they modified it with this new stairway. It simply was, you know, we have this issue, we have a hill. We have dirt coming down the hill, we can put up erosion or we can make it into a stairway. You make an interesting point, and that is that they went around to the gravel to climb it, but when they came down, they came down this way and they didn't go up it, they only came down it? I don't know what other people did. Tim, I was trying to rationalize your hypothesis, which means that if they came down this way by the only way, either it was some sort of transportation device like a transporter or a helicopter or they parachuted into the access area or they used the gravel or they used the grass on the side. If they only used this in one direction, which is downhill. There really is no evidence about prior use, and there's no evidence that the gravel pathway is relevant to this particular stairway. The defendants climbed the gravel pathway somewhere down the road. My point is that you raise an interesting point that I hadn't thought about, which was the people at the top of the hill were the only ones that used this access. The people at the bottom of the hill didn't use this access. They didn't climb up there. They only climbed down from there. Admittedly, and I have to in some sense be consistent, I don't really know a lot about the prior, but that is the case. This was not a path. I have a question. Yes, sir. The first reserve's attorney argued that with respect to, I believe he stated with respect to 3106, that willful and wanton did not apply. As I read 3106, it provides that willful and wanton is an exception to the building. I'll read it. Yes, I have it noted. Neither the local public entity nor public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings, or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct, approximately causing the injury. Now, the attorney for the Forest Reserve described absolute immunity, and it would seem to me that willful and wanton is an exception under 3106, which would apply to recreational property, and this hill or stairway could be described as, I assume, recreational property. Do you agree with that? I agree with you, Justice. That willful and wanton would apply as an exception to 3106 immunity? Right. I guess I do my recollection that there was some back and forth about which sections the council was referring to 3107 about the path. I have the same question. Absolutely. Unquivocally, for those public properties, willful and wanton is an exception, and in reviewing all the case law where there is some evidence of a dangerous condition, whether it was an accident or knowledge, somebody warned them, then that gives rise to the potential for willful and wanton. What happens in this case? I believe that 3107, which is immunity based on if you have discretion, you have the right to use the discretion and the use of discretion to do something, and willful and wanton is not an exception. Which would apply? Could 3107 or 3106 where your facts situation could fit the language of 3106 and also fit the language of 3107? In one you have willful and wanton as an exception to the Tort Immunity Act, in the other you don't. Which one applies? I think, frankly, that clearly 106 applies. That's not in the speech. The defendant asserts an additional immunity based on the discretionary ministerial distinction. Our position on that is that it's not discretionary that they have the obligation to establish both components, which is discretion and policy, and if there's evidence of any type of standard or rule or regulation that removes it from the discretionary matter. So viewing either or other, there's evidence about the standards that establish that this matter really isn't subject to summary judgment, but should be submitted to a jury. I have no further questions. Thank you so much for your time. Thank you. If you take a short recess, we have other cases on the call. Court is in recess.